O’Toole, J.
This matter was tried to the Court sitting without a jury. Upon the evidence, the Court makes the following findings of fact and rulings of law:
Findings of Fact
The plaintiffs are the Trustees of the 1105 Massachusetts Avenue Condominium Trust, which is the organization of unit owners of the 1105 Massachusetts Avenue Condominium. The 1105 Massachusetts Ave *343 nue Condominium was established by a Master Deed, in accordance with G.L.c. 183A, executed on May 12, 1974 and recorded on May 14, 1974.
The defendants are the Trustees of the 1105 B Massachusetts Avenue Realty Trust, which is the owner of several units in the Condominium. The Condominium Trust, the unit owners, association, was created by a Declaration of Trust also executed on May 12 and recorded on May 14, 1974.
From its inception, the Condominium has included three different kinds of units: retail businesses, professional offices, and residences. At the time this action was commenced, the Condominium contained retail units on the basement and first floor levels, including four restaurants (with a total capacity of 315 seats), a barber shop/beauty salon, a record store, a game store, a poster store, a travel agency, a convenience store, and a clothing store. The defendants own all the retail units and lease them to the respective occupants of those units. At the time the action was commenced, the Condominium also had twenty-two units occupied as.professional offices; the rest were residential units.
The Master Deed defined the “common areas and facilities” of the Condominium as follows:
“5. Common areas and facilities. The common areas and facilities of the Condominium consist of:
“(a) The land above described, together with the benefit of and subject to all rights, easements, restrictions and agreements of record so far as the same may be in force;
“(b) The foundations, structural columns, girders, beams, supports, exterior walls, roof and entrances and exits of the Building, and common walls within the Building;
“(c) The entrance lobbies, halls, and corridors serving more than one Unit and the mailboxes, closets, fire extinguishers and other facilities therein, stairways, elevators and laundry rooms;
“(d) Installations of central services such as power, light, hot and cold water, heating, and waste disposal, including all equipment attendant thereto (but not including equipment contained within and servicing a single Unit);
“(e) All conduits, chutes, ducts, plumbing, wiring, flues and other facilities for the furnishing of utility services or waste removal which are contained in portions of the Building contributing to the structure or support thereof, and all such facilities contained within any Unit, which serve parts of the Building other than the Unit within which such facilities are contained, together with an easement of access thereto for maintenance, repair and replacement, as aforesaid;
“(f) All heating apparatus for common areas and facilities and other common equipment wherever located in, on or around the Building and all areas in the basement and upper garage levels, subject to the provisions of paragraph (i) below;
“(g) The superintendent’s apartment situated on the first floor of the Building;
“(h) The yards, lawns, gardens, walkways, and the improvements thereon and thereof, including walls, bulkheads, railings, steps, lighting fixtures and planters;
“(i) A leasehold estate in the facilities located in the basement and upper garage levels of the Building, which facilities are the subject of a 155-year lease from [sic] to the 1105 Massachusetts Avenue Condominium Trust;
“(j) Storage areas if any there be; and
“(k) Such additional common areas and facilities as may be defined in Chapter 183A.
“Heating and ventilation facilities located on the roof of the Upper Garage Level shall be appurtenant to the commercial units they serve and shall not be common facilities, with the result that the owner of the unit served by the heating and ventilation facility shall be responsible for its maintenance and replacement.
“The common areas and facilities shall be subject to the provisions of the By-Laws of the 1105 Massachusetts Avenue Condominium Trust, hereinafter referred to, and to rules and regulations which may be promulgated pursuant thereto with respect to the use thereof, assignments of certain such facilities to particular Unit owners (e.g. garage space) and payments required therefor.”
The Master Deed also provided that it could be amended by a written, recorded instrument signed by the owners of units entitled to at least 75% of the undivided interest in the common areas and by a majority of the trustees of the Condominium Trust, except that no amendment could alter “the percentage of the undivided interest to which any Unit is entitled in the common areas and facilities” unless executed by the owners of all the Units.
Under the By-laws of the Condominium Association (as adopted in the declaration of trust), the unit owners are responsible for the “common expenses” of the Condominium in proportion to their respective percentages of beneficial interest in the ownership of the common areas and facilities. The term “common expenses” is not separately defined in the trust instrument or by-laws. It is defined in the statute as “the expenses of administration, maintenance, repair or replacement of the common areas and facilities, and expenses declared common expenses by this chapter." G.L.c. 183A, §1.
Water is supplied to the building from municipal pipes through a single water meter into pipes within the building. Pipes then run through the building, branching off into pipes supplying water to individual units, as well as to other facilities such as common area bathrooms adjacent to the retail units.
*344 From the beginning, the cost of water supplied to the Condominium by the City of Cambridge has been charged to all unit owners, retail and residential, as part of the common expenses of the Condominium, each unit owner paying the same proportion of the cost of water as that owner’s percentage undivided interest in the common areas of the Condominium.
The retail units, as a group, have actually consumed a considerably higher proportion of the water supplied to the Condominium than those units’ collective interest in the common' areas and consequent share of the “common expenses.” The Trustees have proposed to install individual water meters to measure the actual use of water by the retail units. However, for the remaining units, including both the residential units and the office units, the Trustees propose not to install individual water meters but rather to continue to bill unit owners according to their respective percentage interests for the balance of the water costs, presumably the net cost of water determined by deducting from the total cost the amounts that the individually metered retail units have paid directly for the water they have each actually used.
Similarly to the assessment of water costs, from the beginning of the Condominium the Trustees of the unit owners’ association treated the costs of storage and removal of trash as a common expense of the Condominium and billed each unit owner for the owner’s proportionate share of the costs. In the late 1970’s, however, because the retail units were generating proportionately more trash than their aggregate ownership interest, the Trustees stopped providing trash removal service for the retail units and prohibited the occupants of those units from using the Condominium’s trash room and facilities which were part of the common facilities of the Condominium. The owners of the retail units (that is, the present defendants’ predecessors) agreed not to use the common facilities for trash storage and removal, and they built, at their expense, a shed for trash storage on parking spaces rented from the Trustees. From that point on, the retail owners paid all the costs of removal of the trash generated by the retail units.
From the same time, the owners of the retail units have also paid the costs of cleaning, repairing, and maintaining three sets of bathrooms and adjacent hallways that are located on the two levels of the building containing the retail units.
In contrast, the costs of maintaining and repairing the elevators, which serve the professional and residential units almost exclusively, have been billed to all unit owners, including the owners of the retail units, as a common expense.
Rulings
The plaintiffs commenced this action seeking a declaratory judgment that they may lawfully carry out their intention to install individual water meters for the retail units only, while continuing to bill the rest of the units for water as a common expense. The defendants, in addition to opposing the plaintiffs’ prayer for relief, have counterclaimed for a declaration that the plaintiffs may not install separate water meters for some units but not all (Count I), that the retail units are excused from paying common expense charges attributable to the elevator service which they say they do not use (Count II), and that the costs of trash removal and of the cleaning and maintenance of the common area bathrooms and hallways are common expenses to be borne by the association as a whole and paid for by the unit owners in proportion to their respective common area interests (Count III). The counterclaim also seeks damages.
The framework of authority within which the Trustees of the unit owners’ association may act is established by a combination of the enabling statute, G.L.c. 183A, the master deed, and the by-laws of the Condominium Trust, which are set out in the declaration of trust. As pertains to the present controversy, there are some provisions of the statute that need to be recognized. First, it is provided that each unit owner is “entitled to an undivided interest in the common areas and facilities in the percentage setforthin the master deed.” G.L.c. 183A, §5(a). Such percentage “shall not be altered without the consent of all unit owners whose percentage of the undivided interest is affected, expressed in an amended master deed duly recorded.” Id., §5(b).
Moreover, “all common expenses must be assessed against all units in accordance with their respective percentages of undivided interest in the common areas and facilities.” Id., §6(a)(i) (emphasis added). Further, “[n]o emit owner may exempt himself from liability for his contributions toward the common expenses by waiver of the use or enjoyment of any of the common areas and facilities or by abandonment of the unit or otherwise; and no unit owner shall be entitled to an offset, deduction, or waiver of common expenses or other charges levied or lawfully assessed by the organization of unit owners.” Id., §7.
Subject to these general provisions, the parties are free to design their own arrangements for governing the Condominium. Barclay v. DeVeau, 384 Mass. 676, 682 (1981); Tosney v. Chelmsford Village Condominium Association, 397 Mass. 683, 686-87 (1986). In the present case, the parties have arranged that the “Trustees shall be responsible for the proper maintenance, repair and replacement of the common areas and facilities of the Condominium . . . and the expenses of such maintenance, repair and replacement shall be assessed to the Unit Owners as common expenses of the Condominium . ..” By-laws, §5.3. Moreover, the “Unit Owners shall be liable for common expenses ... of the Condominium in proportion to their respective percentages of beneficial interest...” Id., §5.4. The By-laws maybe amended only with the assent of the owners of 75% of the interest in the common areas and facilities of the Condominium. Declaration of Trust, §7.1.
From the outset, the Trustees have treated water as a common expense and have billed the unit owners *345 in proportion to their percentage interests. While there may once have been some question whether the definition of common expenses contained in the Master deed, considered alone, unambiguously encompassed water consumption in the building as a common expense, the question has been made academic by years of practical interpretation by the parties. Commercial Wharf East Condominium Association v. Waterfront Parking Corp., 407 Mass. 123, 132 (1990).
In accordance with the provisions of G.L.c. 183A, §6(a)(ii), as amended by St. 1994, c. 319, the Trustees may authorize the conversion of the building to a system of individual metering. However, they may not, under that authority, require individual metering only of the retail unit owners. The recent amendment, presumably intended to encourage conservation by making each unit owner’s water bill reflect actual usage, does not authorize the unit owners’ association to create “classes” of unit owners to be treated differently. While the statute permits individual owners to petition for exemption from the requirement or costs of individual metering, it contemplates that there will be individual attention given to the specific reasons for such a waiver. The decision to grant such an exemption is committed to the sole discretion of the governing body of the unit owners’ association, but the exercise of the discretion must be “reasonable.” It is not venturing too far to say that a predetermined scheme to grant waivers for all residential and professional unit owners but to deny waivers for all retail unit owners would not be “reasonable” in the circumstances.
The plaintiffs also are not aided by the notion of “limited common facilities” as discussed in the Tosney case, supra. That case involved the separate assessment of costs applicable to amenities that were provided only to some of the unit owners, because of differences in the designs of their units. In this case, the same “amenity” — water—is provided to all, but the unit owners use it in proportions different from their respective interests in the common areas. Differing levels of use of any particular “common facility” do not constitute a basis for a “limited common facility” as that term was explained in the Tosney case. Tosney, supra, at 687.
Accordingly, the plaintiffs are not entitled to the declaration they seek, and the defendants are entitled to a declaration that the plaintiffs may not install separate water metering for the retail units only.
At the beginning, trash pickup was also billed as a common expense, and each unit owner paid the appropriate percentage of the total cost. As described above, however, in the late 1970’s the Trustees and the owners of the retail units agreed that the retail units would arrange and pay for disposal of the trash they generated. The rest of the emits paid for trash disposal as part of the common expenses of the Condominium.
The difficulty for the plaintiffs is that a particular expense category cannot simultaneously be both a common and an individual expense. Under both the statute and the Condominium’s own organic documents, common expenses are to be shared as prescribed. If an expense category is a “common expense” by definition and/or actual practice, then the cost must be billed to all unit owners in proportion to their undivided interest in the common facilities. The same must also be true for the maintenance costs of the bathrooms and adjacent hallways near the retail units, which are without any question not part of any particular unit, and are therefore “common.”
The defendants are entitled to a declaration to that effect. More troublesome is whether the defendants are entitled to damages to compensate them for what they have overpaid because the trash and bathroom expenses were improperly assessed solely to them, rather than paid by the association and assessed in proportion to ownership. While there is a plausible argument that they are entitled to reimbursement from the time the billing first was split in the late 1970’s, it must also be recognized that, while they may not have been wholly in agreement with the Trustees’ position, the defendants were content over the years to make the accommodation they did for their own reasons, including, undoubtedly, peaceful relations with their fellow unit owners. When the Trustees commenced the present litigation, however, the defendants understandably asserted their own claims in return. Their counterclaim was filed in late December, 1991. It seems fair in the circumstances to consider that to be the time when the defendants determined to “call off’ the arrangement that had existed and to assert their rights with respect to the trash and the common bathrooms.
The defendants are entitled to be reimbursed for the amounts they have expended for trash removal and for the cleaning and maintenance of the bathrooms and adjacent hallways on the basement and first floor levels from the beginning of 1992 to the present. According to Exhibits 15 and 16 in evidence, those amounts are:
For Trash Disposal
1992 $36,457.10
1993 28,475.00
1994 28,944.00
Subtotal $93,876.10
For Bathroom Maintenance
1992 $8,384.93
1993 8,511.86
1994 9,414.00
Subtotal $26,310.79
Total $120,186.89
The defendants will, of course, be liable for their appropriate share of the common expenses as they will be increased to include these amounts, with due account having been taken for any amounts that the defendants have paid for the same years for any trash *346 disposal costs included in common charges previously assessed against them.
Finally, for all the reasons that the plaintiffs cannot prevail, the defendants cannot prevail on their claim regarding the elevator service. It is a common expense, even if the lower level unit owners, including particularly the owners of the retail units, seldom use it.
Order for Judgment
Judgment shall enter under the complaint and Count I of the counterclaim declaring that the Trustees of the 1105 Massachusetts Avenue Condominium Trust may not require separate water meters for some unit owners but not for others based upon the use to which the unit is put, although they may grant individual waivers upon considerations specific to particular units, in accordance with G.L.c. 183A, §6(a)(ii), as amended by St. 1994, c. 319.
Judgment shall enter under Count II of the counterclaim declaring that the defendants are responsible for the common expenses of maintaining elevator service to the extent of their percentage undivided interest in the common areas and facilities of the Condominium.
Judgment shall enter under Count III declaring that the expenses of trash disposal and cleaning of bathrooms and hallways adjacent to the retail units are common expenses of the Condominium for which the defendants are liable only to the extent of their percentage undivided interest in the common areas and facilities of the Condominium, and further declaring that the plaintiffs, as counterclaim defendants, are liable to reimburse the defendants $120,186.89 for the years 1992, 1993, and 1994, less such amounts as may be appropriately assessed as the defendants’ appropriate share of such expenses, measured by their percentage undivided interest in the common areas and facilities of the Condominium.