Spurlock, J.
The plaintiffs, trustees of the Souths-ide Place Condominium Trust (“the trustees”), brought this action on December 13, 1994 against the owner of a Southside Place condominium, Angelo Marotta (“Marotta”), trustee of the M&F Realty Trust; Endless Video Superstore Limited Partnership (“Endless”), Marotta’s tenant; and, the Medford Savings Bank (“MSB”), the recorded holder of a mortgage on Marotta’s condominium. The plaintiffs have requested that this Court order Marotta to pay assessed condominium charges to the Southside Place Condominium Trust (“SPCT”). Plaintiffs have also requested the continuance of an injunction ordering Endless to pay all rent owed to Marotta directly to the SPCT to satisfy Marotta’s unpaid arrearage. Marotta has moved for summary judgment, arguing that the plaintiffs lack the power to assess the condominium charges against him. The trustees have cross-moved for summary *634 judgment, arguing that no issues of material fact are in dispute, and that they had the power to assess the charges, and have perfected their lien according to M.G.L.c. 183A, §6. Endless has also moved for summary judgment, arguing that the charges imposed by the trustees violate the provisions of c. 183A, §6(a), and are therefore void and unenforceable. For the following reasons, Endless’ motion is ALLOWED in part and DENIED in part, Marotta’s motion is ALLOWED in part and DENIED in part, and the trustees’ motion is ALLOWED in part and DENIED in part.
BACKGROUND
All moving parties agree upon the following facts: the Southside Place Office Condominium is a commercial condominium, consisting of eleven units restricted to business, office and retail use. The condominium units are located within a two-story building, with a parking garage located underneath the building, and a second parking area located outside. An elevator runs between the underground parking garage and the two stories of the building. Marotta is the owner of Unit 102-105 (“the unit”) of the condominium, and was the original developer of the complex. Marotta leases the unit to Endless, which operates a Blockbuster Video store inside.
Nine of the eleven units are closed evenings and weekends; a tenth unit houses a doctor’s office, which is open on Sunday afternoons. The eleventh unit houses the Blockbuster Video store operated by Endless; the store is open daily and on Saturdays until 10:00 P.M. The underground garage, common areas and elevator are used exclusively by Blockbuster patrons after 6 P.M. daily, evening hours and Saturdays.
During 1993, a number of instances of vandalism occurred at the condominium building at times when the Blockbuster Video store was the only business in operation. As a result, the trustees hired a private security guard to patrol the building in the evenings and on weekends. The trustees notified Marotta in writing that they were intending to assess all the expenses associated with the security guard against him, as sole trustee of the M&F Realty Trust, owner of the unit. The trustees characterized the security expense as a “special common charge”[5] and voted to assess the entire charge against Marotta. The trustees also determined that Marotta should pay a special common charge corresponding to the expense of utilities consumed during the hours when Blockbuster was the only business open.
Marotta refused to pay the special common charges; as a result, the trustees have assessed additional late charges and costs of collection against him. The trustees applied to this Court for an injunction in December of 1994, which was granted on January 19, 1995, allowing the trustees to intercept and collect all rent due from Endless to Marotta. The trustees have collected $24,991.26 from Endless and expect to collect an additional $24,991.26 which Endless has placed in escrow awaiting the result of this action.
THE CONDOMINIUM DOCUMENTS
The master deed of the condominium states at page 6 that: “each Unit Owner shall be entitled to an undivided beneficial interest in the Common Elements” [according to the schedule of percentages set out in the Master Deed Exhibit C) “which may not be severed from the Unit to which it is appurtenant." The master deed contains a provision (¶15 §A) that effectively prevents amendment of the deed without Marotta’s express approval, so long as Marotta owns a unit in the building. The master deed also contains a provision (¶20 §A) stating that, in the event the master deed and M.G.L.c. 183A conflict, the provisions of the statute control. None of the provisions of the master deed mention limited common areas or special common areas.
The Declaration of Trust for the SPCT states at §2.15 of Article 2 that special common expenses are defined as:
any common expense which under any provision of the master deed and this trust is described as a special common expense, or as an amount to be assessed or paid as a special common expense or as an amount to be assessed or paid as a special common charge or as an expense that is not borne by all unit owners according to their respective liabilities for common expenses.
The Declaration sets out the powers of the trustees to conduct the affairs of the condominium. Section 5.1 of Article 5 empowers the trustees to perform certain actions without first acquiring the consent of the unit owners. These powers include the power:
(xiv) to manage, maintain, repair, restore and improve common elements, when they shall deem necessary, of these units;
(xv) to determine the common expenses and the special common expenses required for the affairs of the condominiums;
(xvi) to collect common expenses and special common expenses from the unit owners;
(xvii) to adopt and amend rules and regulations covering the details of the operation and use of the common elements.
Section 5.4.2 of the Declaration states that:
If a unit owner’s (or the occupant’s) use of commonly metered activities is, in the sole opinion of the trustees, substantially greater than that of the other unit owners, the Trustees may assess such Owner as a Special Common Charge the additional cost to the Trust of such Unit Owner’s (or occupant’s) excessive use. All utility charges arising from an Owner’s (or occupant’s) use of utilities after normal business hours (as such business hours are established by the Trustees) shall be charged to *635 such Unit Owner as a Special Common Charge. In addition, any increase in the cost of insurance . . . shall be payable as a Special Common Charge . . .
Except for Special Common Charges, each Unit Owner’s share of the Common Expenses shall be in proportion to his respective Beneficial Interest.
As regards the assessment of late charges, §5.4.2 allows the trustees to impose an interest charge of up to 18% per annum on late payments. The section also allows trustees to impose a late fee at any rate, regardless of the size of the late payer’s percentage ownership of the SPCT.
Section 7.1 of the Declaration empowers the trustees to amend the Declaration with consent in writing of the unit owners entitled to not less than 67% of the beneficial interest.
The Declaration of Trust was signed by Angelo Marotta, then sole trustee of the SPCT, on November 7, 1989.
Rule 12 of the Rules and Regulations promulgated by the trustees under the power granted to them by §5.6 of the Declaration, states, in pertinent part, that:
[t]he Trustees shall have the right to take all reasonable measures as it [sic] may deem advisable for the security of the Building and any of its occupants, including without limitation . . . the closing of the portions of the Building devoted exclusively for office use after regular working hours, that is, 8 a.m. to 6 p.m. on business days, and on Saturdays, Sundays and legal holidays.
On February 23, 1995, the trustees amended the Declaration and added Rules 16 to 19 to the Rules and Regulations of the SPCT. The amendment to the Declaration includes the addition of “security costs” to the items that meet the definition of special common charges. Rules 16, 17 and 18 authorizes the imposition of late charges and fines against unit owners who fail to pay common charges or special common charges in a timely fashion. Rule 19 explicitly allows the trustees to hire a private security guard and to assess special common charges against unit owners who operate outside of normal business hours.
DISCUSSION
This Court allows summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial" and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).
The moving parties here agree that there are no disputed issues of material fact before this Court. This case is heard under the Superior Court’s equity jurisdiction and requires the Court to interpret the Condominium Enabling Law, M.G.L.c. 183A, the master deed, declaration of trust and regulations of the SPCT, in order to determine as a matter of law the extent to which the trustees’ assessments of the special common area charges against Marotta are legal and enforceable.
G.L.c. 183A, often referred to as the Condominium Enabling Statute, sets out a basic structure that governs the power of condominium associations to assess fees against unit owners.[6] In its present form, §5 does not mention “special common areas” or “limited common areas”;[7] these terms are also not defined in G.L.c. 183A, §1. The concept of limited common areas[8] has, however, become recognized in Massachusetts through the rulings of the appellate courts.
The Supreme Judicial Court recognized and defined the concept of a “limited common area” in Tosney v. Chelmsford Village Condominium Association, 397 Mass. 684 (1986), as: “(an area or facility] available, generally, for the use and enjoyment of one or more but less than all unit owners.” Id. at 687, quoting 1 P. Rohan & M. Reskin, Condominium Law and Practice §6.01[5] (1981). An area of a building accessible only to a minority of unit owners and used only by that same group can clearly qualify as a “limited common area.” Belson v. Thayer & Associates, Inc., 32 Mass.App.Ct. 257 (1992) (roof deck only used by and accessible to penthouse units a “limited common area”). Elevators and parking spaces used exclusively by one or more units can qualify as ’’limited common areas." Tosney v. Chelmsford Village Condominium Association, supra.
The Supreme Judicial Court has also recognized the related concept of a “limited common area charge”: a charge against a unit owner for the expenses incurred in the upkeep and maintenance of a limited common area. Id. at 687. Heating and maintenance assessments for a parking area and an elevator that were accessible to and exclusively used by the occupants of “garden-style” units (a minority of the units in the condominium building) constituted legal and enforceable limited common area charges. Id. at 687. “This court has recognized that common areas may exist which, in fact, are used by only some of the unit owners, and that an association may assess maintenance fees only to those owners who use these areas.” Kaplan v. Boudreaux, 410 Mass. 435, 443 n. 7 (1991), quoting Tosney v. Chelmsford Village Condominium Association, supra.
*636 G.L.c. 183A, §6 governs the responsibility of unit owners for common expenses. The statute states, in pertinent part, that:
(a)(i) Except as provided in clause (ii) herein, all common expenses must be assessed against all units in accordance with their respective percentages of undivided interest in the common areas and facilities . . .[9]
In Tosney, the Supreme Judicial Court ruled that the assessment of a limited common area charge could be made without the prior amendment of the condominium master deed only if the emit owners assessed had purchased their unit with ample notice of the potential for these charges. Tosney v. Chelmsford Village Condominium Association, supra. In Belson v. Thayer & Associates, Inc., supra, the Court stated that the ruling of Tosney should be applied liberally and not restricted to the specific facts of the case.
The expenses contested by Marotta are “limited common area charges” under the Supreme Judicial Court’s definition in Tosney. Tosney v. Chelmsford Village Condominium Association, supra. Consequently, the arrearage assessed against Marotta was assessed illegally to the extent the master deed does not reflect the possibility of a limited common expense assessment related to security or utility costs, or to the extent that Marotta did not have actual notice of his responsibility for such limited common area charges at the time he purchased the unit.
At the time the SPCT was formed, Marotta knew that the trustees could assess charges for late-night and weekend utility usage against unit owners. The master deed for the condominium does not mention limited common area charges but the SPCT Declaration of Trust does. Marotta was the developer of the Southside Place complex, and was initially the sole trustee of the SPCT. He signed the recorded Declaration of Trust, which, in its original form, permitted the trustees to assess limited common charges when unit owners generated utility expenses outside of regular working hours. Consequently, Marotta had notice of his potential responsibility as a unit owner for late-night and weekend utility costs when he purchased the unit.
When the trust was created, Marotta also had actual notice, via §5.4.2 of the Declaration, of the potential for assessments of late fees and interest charges by the trustees against nonpaying or late paying unit owners. The trustees’ assessments of late fees, interest charges and fees corresponding to late-night and weekend utility costs are therefore proper and legal under M.G.L.c. 183A, the recorded master deed, and the Declaration of Trust for the SPCT.
In contrast, Marotta did not have notice of the potential for a limited common area charge for security expenses when he purchased his unit. “Security expenses” are not mentioned in the Declaration or the master deed as an expense category that can give rise to a special common area charge until February 23, 1995, when the trustees amended the Declaration. The Declaration, at the time Marotta was sole trustee, permitted limited common expenses to be assessed for three types of costs: night/weekend utility costs; increases in insurance premiums attributable to the activity of a particular unit owner or group of owners; and disproportionate use by a unit owner of a “commonly metered activity.” The Declaration and the master deed nowhere define security as a commonly metered activity (in their pre-1995 versions).
The trustees’ amendment of the Declaration and promulgation of new regulations are insufficient to pass statutory muster as a legal assessment of a limited common charge for security costs against Marotta. M.G.L.c. 183A[10] specifically requires amendment of the master deed, not the trust instrument, in order to alter pro rata payment of common area expenses or to effect an assessment of special common area expenses, and this legislative policy is motivated by the fact that the master deed, according to statute, can only be amended by the unanimous agreement of unit owners. The only exception to this rule is the “notice” exception of Tosney (assessment power in master deed unnecessary where purchaser had ample notice of potential for assessment at time of purchase). Tosney v. Chelmsford Village Condominium Association, supra.
The only possible authority for the trustees’ assessment of the charge for security expenses comes from the general clause of the Declaration, in effect when the SPCT was formed, that states that a unit owner’s disproportionate use of a commonly metered activity can generate a limited common area charge and is reflected in the clause of the master deed which delegates to the Declaration the definition of categories of limited common area charges. A general provision in a master deed granting trustees the power to create “limited common areas” or “limited common area charges” by amending by-laws or promulgating rules is void: allowing such a provision to be enforced “would undercut the statutory requirement of unanimous consent to alter ownership percentages of undivided interest in the common areas and facilities as expressed in the master deed.” Strauss v. Oyster River Condominium Trust, 417 Mass. 442, 445-46 (1994). The power to assess limited common area charges under the statute in existence before 1996 only exists where it is specifically granted, with reference to the specific type of charge at issue, to the trustees in the master deed.
This Court therefore determines that the trustees’ amendment of the Declaration and promulgation of new regulations on February 23, 1995, were insufficient under M.G.L.c. 183A to grant them legal authority to impose special common charges relative to security. The security charges were therefore ordinary common expenses.
*637 The security costs, as ordinary common expenses, must be assessed according to the unit owners’ proportional interest in the building. The assessment of common expenses along any system other than the pro rata system or the utility metering systems set up by M.G.L.c. 183A, §5 violates the enabling statute, as the statute mandates that common expenses cannot be assessed partially on a pro rata basis and partially on a consumption basis. Garland v. Wolff, Civil No. 91-4573 (Middlesex Superior Court, March 8, 1995) (O’Toole, J.) [3 Mass. L. Rptr. 342], Where a statute is plain and unambiguous, its plain language is controlling. Barclay v. DeVeaux, 384 Mass. 676 (1981), citing Hoffman v. Howmedica, Inc., 373 Mass. 32, 37 (1977). Additionally, even if, arguendo, the statute allowed trustees unfettered discretion in their assessment of common expenses, the assessment of common expenses for security along anything other than a pro rata beneficial interest system violated the Declaration of Trust of the SPCT and was outside the power granted to the trustees under the Declaration. The Court therefore orders security costs be assessed by a pro rata beneficial interest system or not assessed at all.
This Court is mindful of the Supreme Judicial Court’s statement in Tosney. that “it does not seem equitable or logical that townhouse unit owners should be required to pay a portion of the expenses for facilities from which they receive no benefit.” Tosney v. Chelmsford Village Condominium Association, supra, at 687. That balance of equities is not present here: the equitable beneficiaries of the security costs include all of the unit owners. Every business in the complex has experienced a reduction in the risk of property damage and theft as a result of the presence of the guard. The doctor’s office is also open at some times on the weekend and benefits directly from the increased security, as do any of the other unit owners when the employees of the businesses situated in the complex work at night or on weekends. In any case, it is no defense for the trustees to claim that Marotta is the only unit owner directly benefitting from the trust’s expenditure on security. G.L.c. 183A, §7 states that:
[n]o unit owner may exempt himself from liability for his contribution toward the common expenses by waiver of the use or enjoyment of any of the common areas and facilities or by abandonment of the unit or otherwise; and no unit owner shall be entitled to an offset, deduction, or waiver of common expenses or other charges levied or lawfully assessed by the organization of unit owners.
This Court is also mindful that the general clause concerning commonly metered activities might best be construed against Marotta as he was the original developer and drafter of the Declaration. However, no matter how it is construed, this clause does not grant the trustees the power to assess a limited common area charge for a type of expense not defined as a such in the master deed.
While the Court recognizes that the trustee’s imposition of a limited common charge based on security expenses was illegal, the Court also recognizes that Marotta has acted illegally. A condominium unit owner “may not challenge a common expense assessment by refusing to pay for it.” Blood v. Edgar’s, Inc., 36 Mass.App.Ct. 402 (1994).[11] Here, Marotta refused to pay the assessed limited common expenses. He did not follow the accepted procedure recommended by the Appeals Court for unit owners who believe they have been assessed illegal expenses: prompt payment, followed by a suit requesting a declaratory judgment concerning the legality of the assessment.
As a result, this Court will allow the trustees to enforce their claim against Marotta for late charges relating to all his unpaid arrearage. Marotta will not have to pay the special common expenses assessed against him in so far as they relate to the cost of the security guard; until the master deed is amended by unanimous consent of unit owners, all such expenses remain common expenses and must be paid pro rata. However, Marotta had no right to refuse to pay the limited common expense despite its illegal assessment. Consequently, he must still recompense the SPCT for the late charges assessed against him as a result of the total amount of his nonpayment.[12]
ORDER
For the foregoing reasons, defendant Endless Video Limited Partnership’s motion for summary judgment is ALLOWED and DENIED in part. Defendant Angelo Marotta’s motion for summary judgment is ALLOWED in part and DENIED in part. Plaintiff trustees’ motion for summary judgment is ALLOWED in part and DENIED in part. The injunction compelling Endless Video to pay rent due to the trustees rather than to Marotta is hereby ORDERED dissolved.

The condominium statute and appellate court opinions on this issue use the phrases “special common expenses,” “limited common expenses,” “special common area charges” and “limited common area charges” synonymously.

In its present form, c. 183A §5 states that:
(a) Each unit owner shall be entitled to an undivided interest in the common areas and facilities in the percentage set forth in the master deed. Such percentage shall be in the approximate relation that the fair value of the unit on the date of the master deed bears to the then aggregate fair value of all the units.
(b) The percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the master deed shall not be altered without the consent of all unit owners whose percentage of the undivided interest is affected, expressed in an amended master deed *638 duly recorded. The percentage of the undivided interest in the common areas and facilities shall not be separated from the unit to which it appertains, and shall be deemed to be conveyed or encumbered with the unit even though such interest is not expressly mentioned or described in the conveyance or other instrument.
(c) The common areas and facilities shall remain undivided and no unit owner or any other person shall bring any action for partition or division of any part thereof, except as provided in sections seventeen, eighteen and nineteen. Any covenant or provision to the contrary shall be null and void.
(Sections (d) through (g) omitted)
The statute has been extensively amended, the amendments taking effect January 1, 1996. These amendments allow trustees of condominium associations greater latitude in the enactment of “limited common areas,” but still require recording in a master deed for there to be effective notice of the limited common area.

The amended versions of c. 183A, §5(b) and (c), effective January 1, 1996, allow trustees to grant unit owners exclusive easements over sections of the common areas, thereby creating “limited common areas.” Section 5(c), in its amended version, requires that, when a limited common area is created, the master deed of the condominium be amended and recorded, and states that the trustees may not create a limited common area without the consent of the unit owner receiving the easement and all abutting unit owners.

“Limited common areas” is the term used more frequently by commentators and by the appellate courts and will be used throughout the rest of this opinion.

The following section, §6(a)(ii), has been amended, the new version going into effect January 1, 1996. The pre-1996 version does not mention “limited common area charges.” The post-1996 version states in pertinent part that:
(ii) Notwithstanding the provisions of clause (1), the organization of unit owners may assess the cost of maintaining, repairing or replacing a limited common area or facility, solely to the owner of a unit to which a limited common area is appurtenant, allocated or designated, and such assessment shall be enforceable as a common expense assessment under this chapter; . . .

In its pre-1996 version.

 While this decision was limited to prospective effect, the ruling came down before the start of the dispute between Marotta and the trustees in December 1994.

Marotta argues in his brief that the trustees’ statutory lien on the condominium is invalid to the extent that the lien reflects illegally assessed limited common charges. This assertion is correct and, as a result, the trustees’ lien on the condominium under M.G.L.c. 183A is limited to the portion of the unpaid assessments reflecting night and weekend utility use and the portion of the assessments reflecting late fees and interest on Marotta’s unpaid balance.